UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Canal Insurance Company,

          Plaintiff,

v.                                                                Civil No. 08-439 (JNE/RLE)
                                                                  ORDER
Kwik Kargo, Inc. Trucking,
Clear Lake Enterprises, LLC,
Matthew Anderson, Duane Wolff,
and Wolff Agency, Inc.,

          Defendants,

and

Kwik Kargo, Inc. Trucking,

          Third-Party Plaintiff,

v.

Duane Wolff and Wolff Agency, Inc.,

          Third-Party Defendants.

_____

Daniel E. Hintz, Esq., Johnson & Lindberg, P.A., appeared for Plaintiff Canal Insurance
Company.

Todd A. Kelm, Esq., Kelm & Reuter, P.A., appeared for Defendants Clear Lake Enterprises,
LLC, and Kwik Kargo, Inc. Trucking.

Aaron M. Simon, Esq., Tomsche, Sonnesyn & Tomsche, P.A., appeared for Defendants Duane
Wolff and Wolff Agency, Inc.

Defendant Matthew Anderson did not appear.

_____

          Canal Insurance Company (Canal) brings this action against Kwik Kargo, Inc. Trucking

(Kwik Kargo), Clear Lake Enterprises, LLC (Clear Lake), Wolff Agency, Inc., Duane Wolff, and

Matthew Anderson.  Canal seeks recovery for payments it made to settle a lawsuit arising out of

a motor vehicle accident in Mississippi.  The case is before the Court on Canal's motion for

partial summary judgment and the motion of Wolff and the Wolff Agency (collectively, Wolff

Defendants) for summary judgment.  For the reasons set forth below, the Court grants the Wolff

Defendants' motion and grants Canal's motion in part and denies it in part.

## I.      BACKGROUND

On August 19, 2004, a Peterbilt semi-tractor (Tractor) driven by Anderson in Mississippi

rear-ended a Pontiac Sunfire driven by Sharon Jordan.  Anderson was driving the Tractor in the

course and scope of his employment with Kwik Kargo, a motor carrier engaged in the business

of hauling freight.  Kwik Kargo leased the Tractor from Clear Lake, an equipment leasing

company, pursuant to a written lease agreement executed in 1999.  Kwik Kargo and Clear Lake

are solely owned by Kenneth Kotzer.  Kathleen Kotzer, who is married to Kenneth Kotzer,

works at Kwik Kargo as a secretary.

At the time of the accident, Canal provided liability insurance for approximately thirty of

Kwik Kargo's semi-tractors under policy number 444696 (Policy).  The Tractor, however, was

not listed on the Policy.  The Policy included a "Form MCS-90 Endorsement for Motor Carrier

Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of

1980" (MCS-90), which required Canal to "pay . . . any final judgment recovered against the

insured for public liability resulting from negligence in the operation, maintenance or use of

motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the

Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically

described in the policy."  Kwik Kargo obtained the Policy through the Wolff Agency, which is

owned by Wolff.

Jordan sued Kwik Kargo and Anderson in Hinds County Circuit Court, Mississippi, on November 7, 2005 (Jordan lawsuit).[1]  In January 2006, the Wolff Agency received a letter from Jordan's attorney enclosing a copy of Jordan's complaint.  The Wolff Agency faxed the letter and complaint to Kwik Kargo on January 19, 2006, along with a request for information about the vehicle involved in the accident, but did not forward the letter or complaint to Canal.

On August 16, 2007, a default judgment in the amount of $209,988.24 was entered against Kwik Kargo and Anderson in the Jordan lawsuit.  Jordan's attorney sent a letter demanding payment of the judgment to Canal on August 20, 2007.  Canal settled the Jordan lawsuit and satisfied the judgment by paying Jordan $75,000, and alleges that it incurred $7,928.50 in attorney fees and investigatory costs in doing so.

Canal filed suit against Kwik Kargo, Clear Lake, and Anderson in this Court on February 20, 2008, alleging breach of contract against Kwik Kargo and seeking indemnification from Kwik Kargo, Clear Lake, and Anderson under the MCS-90, the Policy, and a Filed Policy Indemnity Agreement.  Anderson, who is pro se, answered in a letter.  Kwik Kargo and Clear Lake answered, and Kwik Kargo filed a Third-Party Complaint against the Wolff Defendants alleging breach of contract, breach of fiduciary duty, and negligence.  The Wolff Defendants answered the Third-Party Complaint.  Canal then filed an Amended Complaint which reiterated Canal's original claims, asserted a claim of negligence against Kwik Kargo, and asserted claims of breach of contract and breach of fiduciary duty against the Wolff Defendants.  The Wolff

---

[1]     The exhibits submitted by Kwik Kargo and Clear Lake include a copy of a complaint filed by Jordan against Kwik Kargo and Anderson in Rankin County Circuit Court, Mississippi, on September 1, 2005.  The Rankin County complaint is virtually identical to the Hinds County complaint, except that it alleges the accident occurred in Rankin County rather than Hinds County.  A Kwik Kargo fax transmittal form indicates that Kwik Kargo faxed a copy of the Rankin County complaint to the Wolff Agency on September 9, 2005, and again on August 30, 2007.  No evidence suggests that the Wolff Agency took any action with respect to the Rankin County complaint.

Defendants answered the Amended Complaint and made a Cross-Claim seeking indemnification from Kwik Kargo and Clear Lake.  Kwik Kargo and Clear Lake answered the Amended Complaint and the Cross-Claim and made a Cross-Claim seeking indemnification from the Wolff Defendants.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies its burden, the nonmovant must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.    Canal's Motion

Canal seeks summary judgment that Kwik Kargo and Clear Lake are liable for all reasonable amounts paid by Canal in settling the Jordan lawsuit, all reasonable costs and attorney fees incurred by Canal in settling the Jordan lawsuit, and all reasonable costs and attorney fees incurred by Canal in pursuing reimbursement from Kwik Kargo and Clear Lake during this lawsuit.  Although Canal does not expressly seek partial summary judgment on a specific claim, it appears that Canal's arguments are directed to its claim for indemnification under the MCS-90. The Court first considers Kwik Kargo's liability under the MCS-90.

The MCS-90, which is a federal form promulgated and set out verbatim in 49 C.F.R.

§ 387.15 (2008), amends the Policy "to assure compliance by the insured . . . as a motor carrier

of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and

regulations of the Federal Highway Administration and the Interstate Commerce Commission

(ICC)."[2]  *Century Indem. Co. v. Carlson*, 133 F.3d 591, 594 (8th Cir. 1998).  "The MCS-90

provides a broad guaranty that the insurer will pay certain judgments incurred by the insured

regardless of whether the motor vehicle involved is specifically described in the policy or

whether the loss was otherwise excluded by the terms of the policy."  *Id.*  The MCS-90 "was

directed at trucking companies' practice of using leased or borrowed vehicles, which often

resulted in evasion of safety requirements and confusion about financial responsibility for

damage caused by the operation of the vehicles."  *Wells v. Gulf Ins. Co.*, 484 F.3d 313, 316 (5th

Cir. 2007).  The MCS-90 originated from the desire of the ICC "that the public be adequately

protected when a licensed carrier uses a leased vehicle to transport goods pursuant to an ICC

certificate."[3]  *Id.* at 316-17.

The dispute between Kwik Kargo and Canal centers on the statement in the MCS-90 that

"[t]he insured agrees to reimburse the company . . . for any payment that the company would not

have been obligated to make under the provisions of the policy except for the agreement

contained in this endorsement."  Kwik Kargo acknowledged in its memorandum in opposition to

Canal's motion that the Tractor was not listed on the Policy at the time of the Jordan accident.

---

[2]     The substance of the MCS-90 did not change between 2004 and 2008.

[3]     Congress abolished the ICC in 1995.  *See* ICC Termination Act, 109 Stat. 803 (1995).
"The ICC's authority to regulate motor carriers was transferred to the Department of
Transportation, but the old ICC regulations remain in effect until the new regulations are
promulgated."  *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 855 n.3 (9th Cir. 2000) (citation
omitted).

Kwik Kargo contends, however, that there are genuine issues of material fact as to whether Kwik Kargo asked to have the Tractor listed on the Policy because Kenneth Kotzer testified during his deposition that the Tractor "should have been" listed on the Policy.  Kwik Kargo contends that if the Tractor had been listed on the Policy, Canal would have been obligated to satisfy Jordan's judgment independent of the MCS-90, and therefore has no right of reimbursement under the MCS-90.  Canal responds that the issue with respect to reimbursement under the MCS-90 is whether the Tractor was listed on the Policy, not whether it should have been listed.  Canal also responds that there is no evidence that Kwik Kargo ever asked to have the Tractor listed on the Policy.

The Court first considers whether there is evidence that Kwik Kargo asked to have the Tractor listed on the Policy.  Kwik Kargo initially asserted in its responses to Canal's Interrogatories that it asked the Wolff Agency to list the Tractor on the Policy during an April 2004 meeting between the Kotzers, Wolff, and Wolff Agency customer service representative Bettie Marnich.[4]  Kenneth Kotzer testified during his deposition, however, that he did not know whether the Tractor was discussed at the April 2004 meeting.  He also testified that he did not remember any specific discussions or communications about the Tractor, that he had no recollection of contacting the Wolff Agency about the Tractor before the accident, and that he had no documentation showing that the Tractor was ever listed on the Policy.  Kathleen Kotzer testified that she did not recall the April 2004 meeting or ever asking the Wolff Agency to include the Tractor on the Policy.  Kwik Kargo did not identify any other evidence indicating that Kwik Kargo ever asked the Wolff Agency to list the Tractor on the Policy.  Kwik Kargo

---

[4]     Kwik Kargo asserted in its responses to Canal's Interrogatories that the Kotzers provided a written list of vehicles to be listed on the Policy to the Wolff Agency at the April 2004 meeting, but this list is not in the record.

cannot create an issue of fact regarding whether the Kotzers asked the Wolff Agency to list the Tractor on the Policy by relying on its responses to Canal's Interrogatories.  *See Stearns v. McGuire*, 154 F. App'x. 70, 76 (10th Cir. 2005) (holding that defendant could not create an issue of fact by relying on an earlier interrogatory response while ignoring later contradictory deposition testimony); *Darnell v. Target Stores*, 16 F.3d 174, 176-77 (7th Cir. 1994) ("[Plaintiff] cannot 'create issues of fact' by relying on the affidavits of [witnesses], which [the witnesses] contradicted in their own [subsequent] depositions.").  Moreover, Kenneth Kotzer's allegation that the Tractor "should have been" listed is insufficient to create a genuine issue of material fact that Kwik Kargo ever asked the Wolff Agency to list the Tractor on the Policy.  *See Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) ("To survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy.'").

At the hearing on Canal's motion, Kwik Kargo asserted that the Court should not grant summary judgment because Kwik Kargo intends to call at trial Marnich, the Wolff Agency customer service representative who received Kwik Kargo's requests relating to insurance, to establish that Kwik Kargo asked the Wolff Agency to list the Tractor on the Policy.  Kwik Kargo may not avoid summary judgment by asserting that it can produce evidence that will support its arguments at trial.  *See Rodriguez-Pinto v. Tirado-Delgado*, 982 F.2d 34, 39 (1st Cir. 1993) ("[T]he nonmovant cannot avoid summary judgment merely by promising to produce admissible evidence at trial."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed. 1998) ("The nonmovant is not entitled to a trial on the basis of a hope that he can produce some evidence at that time.").  The Court therefore grants

partial summary judgment of liability on Canal's claim for indemnification against Kwik Kargo

under the MCS-90.

The Court turns to Clear Lake's liability under the MCS-90.  Canal contends that Clear

Lake is liable because the MCS-90 provides that "[t]he insured agrees to reimburse" and Clear

Lake is an insured under the Policy.  The Policy defines an insured as follows:

> III.    PERSONS INSURED:  Each of the following is an insured under this
> insurance to the extent set forth below:
>
> (a) the named insured;
>
> . . .
>
> (d) any other person or organization but only with respect to his or its liability
> because of acts or omissions of an insured under (a), (b) or (c) above.

Specifically, Canal contends that Clear Lake is an insured under paragraph (d) of the

Policy because paragraphs 7 and 8 of the lease for the Tractor between Clear Lake and Kwik

Kargo provide that "[Clear Lake] agrees to retain exclusive possession, control and use of said

vehicles for the duration of this contract, within the meaning of, and only for the purpose of

compliance with the ruling of the Interstate Commerce Commission" and that "[Clear Lake]

agrees to assume full responsibility to the public, and all regulatory bodies having jurisdiction."

Canal contends that this language renders Clear Lake "contractually liable" for the acts and

omissions of Kwik Kargo, making Clear Lake an insured under paragraph (d) of the Policy.

Courts have interpreted the phrase "any other person or organization but only with

respect to his or its liability because of acts or omissions of an insured" and similar language as

requiring vicarious liability for the acts of an insured by the entity sought to be found an insured.

*See, e.g.*, *Koch Asphalt Co. v. The Farmers Ins. Group*, 867 F.2d 1164, 1166-68 (8th Cir. 1989)

(holding Koch Asphalt was not an insured under a clause defining insured as "another person or

organization but only with respect to his or its liability because of [acts] or omissions of an insured" because it was being held liable for its own conduct, not the conduct of an insured); *Vulcan Materials Co. v. Cas. Ins. Co.*, 723 F. Supp. 1263, 1264-65 (N.D. Ill. 1989) (holding that the phrase "any other person or organization but only with respect to his or its liability because of acts or omissions of an insured" is "plainly a vicarious liability provision and nothing more: It insures all those who may be vicariously liable for acts or omissions of the named insured"); *Canal Ins. Co. v. Earnshaw*, 629 F. Supp. 114, 120 (D. Kan. 1985) (holding that a defendant was not an insured as "any other person or organization but only with respect to his or its liability because of acts or omissions of an insured" because he was being sued for his own negligence, not for the negligence of another defendant, and no claims of negligence were asserted based on the relationship between the two defendants); *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 294 (Fla. 2007) ("We hold that the phrase 'any other person with respect to liability because of acts or omissions' of the named insured covers only an additional insured's vicarious liability for the negligent acts or omissions of the named insured."). The Court finds these cases persuasive and concludes that for Clear Lake to qualify as an insured under paragraph (d) of the Policy, Clear Lake must be vicariously liable for the acts of an insured.

Here, paragraphs 7 and 8 of the lease for the Tractor, at most, create a contractual obligation owed to Kwik Kargo by Clear Lake.[5] These paragraphs do not establish a legal relationship between Clear Lake and Kwik Kargo that renders Clear Lake vicariously liable for Kwik Kargo's conduct. *See Sutherland v. Barton*, 570 N.W.2d 1, 5 (Minn. 1997) ("[V]icarious

---

[5]     Clear Lake contends that paragraphs 7 and 8 are void as against the public policy behind the MCS-90 and 49 C.F.R. § 387.15. The Court does not address the enforceability of paragraphs 7 and 8 because, for the reasons given above, even if the Court assumes these paragraphs are enforceable, Canal has not shown that Clear Lake is an insured under the Policy.

liability is the 'imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons.'" (quoting *Black's Law Dictionary* 1566 (6th ed. 1990))).

    With respect to Anderson, the lease for the Tractor provides that Kwik Kargo agrees to furnish a driver for the Tractor and that the driver shall be the employee of Kwik Kargo.  Canal has not identified any evidence indicating that, contrary to this lease provision, Anderson was employed by or the agent of Clear Lake, or otherwise supporting the imposition of vicarious liability on Clear Lake.  Instead, Canal contends that Clear Lake is vicariously liable for Anderson's actions under Minn. Stat. § 170.54 (2004), which provides that "[w]henever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."[6]

    As an initial matter, the Court questions the applicability of this statute to reimbursement pursuant to the MCS-90 given the extensive federal regulation of interstate motor carriers, which includes the promulgation of the MCS-90.  In addition, the Minnesota Court of Appeals has held that 49 U.S.C. § 30106 (Supp. V 2005), generally known as the Graves Amendment, preempts the Minnesota statute with respect to owners of rental vehicles.  *See Meyer v. Nwokedi*, 759 N.W.2d 426, 428-31 (Minn. Ct. App.), *rev. granted* (Minn. Mar. 31, 2009).  The Graves Amendment provides:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—

---

[6]    Minn. Stat. § 170.54 was renumbered as Minn. Stat. § 169.09, subd. 5a, in 2005.  2005 Minn. Laws 1877.

(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a).  Any attempt to impose vicarious liability on Clear Lake, which leases tractors and trailers to Kwik Kargo, through Minn. Stat. § 170.54 is precluded by the Graves Amendment in the absence of allegations of negligence or criminal wrongdoing on the part of Clear Lake.[7]  Moreover, Minn. Stat. § 170.54, which by its terms states "[w]henever any motor vehicle shall be operated within this state . . . the operator thereof shall in case of accident," is inapplicable to accidents that occur outside of Minnesota.  *Boatwright v. Budak*, 625 N.W.2d 483, 488 (Minn. Ct. App. 2001) ("[W]e hold that Minn. Stat. § 170.54 applies only to accidents that occur within Minnesota.").  Canal cannot impose vicarious liability on Clear Lake pursuant to Minn. Stat. § 170.54 because the Jordan accident occurred in Mississippi.  *See id.*

Mississippi does not impose liability on the owner of a vehicle for the acts of a permissive driver in the absence of an agent or employee relationship.  *See West Bros. v. Herrington*, 139 So. 2d 842, 843-44 (Miss. 1962); *see also* Kenneth J. Rojc and Kathleen E. Stendahl, *Vicarious Liability of Motor Vehicle Lessors*, 59 Bus. Law. 1161, 1162 & nn.10-11 (2004) (identifying Mississippi as a jurisdiction that does not have vicarious liability for motor vehicle lessors).  Because no evidence suggests that Clear Lake is vicariously liable for the acts of Anderson or Kwik Kargo and Canal cannot impose vicarious liability on Clear Lake under Minn. Stat. § 170.54, the Court concludes that Clear Lake is not an "insured" under

---

[7]     The Graves Amendment applies to any action "commenced on or after [August 10, 2005,] without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before [August 10, 2005]."  49 U.S.C. § 30106(c).  Both the Jordan lawsuit and this lawsuit were filed after August 10, 2005.

paragraph (d) of the Policy.  The Court denies Canal's motion for partial summary judgment that Clear Lake is liable to Canal under the MCS-90.

Clear Lake sought dismissal of all claims against it in its memorandum in opposition to Canal's motion.  Canal responds that Clear Lake's request is improper because Clear Lake served and filed its request 22 days before the scheduled hearing rather than the 45 days required by Local Rule 7.1(b)(1).  Clear Lake's request for dismissal is untimely and fails to comply with the requirements for supporting documents set forth in Local Rule 7.1(b)(1).  However, because the definition of "insured" found in paragraph (d) of the Policy requires vicarious liability and Canal has offered no evidence indicating that Clear Lake is vicariously liable for Anderson or Kwik Kargo, it appears that summary judgment that Clear Lake is not liable to Canal under the MCS-90, the Policy, or the Filed Policy Indemnity Agreement is warranted.  The Court orders Canal to show cause by May 22, 2009, why summary judgment of non-liability to Clear Lake should not be granted.  If Canal is unable to do so or makes no argument, the Court will dismiss Canal's claims against Clear Lake.

The Court next considers the scope of Canal's reimbursement.  The MCS-90 policy provides that the insured "agrees to reimburse the company . . . for any payment that the company would not have been obligated to make . . . except for the agreement contained in this endorsement."  Kwik Kargo must reimburse Canal for a reasonable amount paid by Canal in settling the Jordan lawsuit because Canal would not have been obligated to settle the Jordan lawsuit except for the MCS-90.  *See Adams v. Royal Indem. Co.*, 99 F.3d 964, 972 (10th Cir. 1996) ("In situations where the policy absent the endorsement did not insure the vehicle which caused the injuries, the endorsement explicitly requires that the insured reimburse the insurer because the insurer's payment to the injured motorist is a 'payment the company would not have

been obligated to make under the provisions of the policy except for the agreement contained in

this endorsement.'" (quoting 49 C.F.R. § 387.15)).  Canal also seeks reasonable costs and

attorney fees incurred in the settlement of the Jordan lawsuit and in pursuing reimbursement

from Kwik Kargo during this lawsuit.  The Court concludes that these costs and fees are

payments that Canal would not have been obligated to make except for the MCS-90, and grants

partial summary judgment that Kwik Kargo is liable for these payments.

**B.     Wolff Defendants' Motion**

The Wolff Defendants seek dismissal of all of the claims of Canal, Kwik Kargo, and

Clear Lake against the Wolff Defendants on two grounds.  First, they contend that no evidence

shows that Kwik Kargo asked the Wolff Defendants to list the Tractor on the Policy.  Second,

they argue that Canal and Kwik Kargo are unable to show any damages resulting from Canal's

late notice of the Jordan lawsuit.

With respect to whether Kwik Kargo asked the Wolff Defendants to list the Tractor on

the Policy, Kwik Kargo contends that summary judgment is inappropriate because there is

contradictory evidence as to Kwik Kargo's customary manner of asking the Wolff Defendants to

add vehicles to the Policy.  Specifically, the Kotzers testified that it was Kwik Kargo's custom to

ask the Wolff Agency to add vehicles to the Policy over the telephone, but Wolff testified that

changes to coverage were always made in writing, typically via facsimile.  Regardless of whether

Kwik Kargo customarily requested changes over the telephone or in writing, for the reasons

given with respect to Canal's motion, there is no evidence that Kwik Kargo asked to have the

Tractor listed on the Policy.  In the absence of any such evidence, Kwik Kargo has not raised a

genuine issue of material fact as to whether Kwik Kargo asked the Wolff Agency to list the

Tractor on the Policy.  The Court therefore grants the Wolff Defendants summary judgment on

Canal's claims for negligence, breach of contract, and breach of fiduciary duty for the failure to

list the Tractor on the Policy and on the Cross-Claim of Kwik Kargo and Clear Lake for indemnification.

With respect to damages, the Wolff Defendants argue that Canal and Kwik Kargo cannot show damages resulting from Canal's late notice of the Jordan lawsuit. "Under Minnesota law, damages may not be speculative, remote, or conjectural. However, once the fact of damages is proved with certainty, the extent of the damages need only be shown to have a reasonable basis in the evidence." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 928 (8th Cir. 2005) (citation omitted). Rhea Culbertson Fleming, Esq., Canal's corporate representative, testified during her deposition that she could not quantify any prejudice that Canal suffered as a result of the entry of default judgment and subsequent settlement for $75,000 in the Jordan lawsuit. Fleming testified that she could not "speculate as to what may have been available" or state what the settlement value of the Jordan lawsuit would have been had Canal received timely notice of it. Finally, she testified that determining the prejudice to Canal in terms of attorney fees "would have to be based on a lot of speculation, and I simply don't know."

Canal did not respond to the Wolff Defendants' motion. Kwik Kargo contends that its damages would be the sum of the $75,000 paid by Canal to settle the Jordan lawsuit and the attorney fees and costs sought by Canal less the premium Kwik Kargo would have paid to list the Tractor on the Policy. This argument fails, however, because there is no evidence that Kwik Kargo asked the Wolff Defendants to list the Tractor on the Policy. With respect to Canal's damages, Kwik Kargo presented no evidence of what a reasonable settlement of the Jordan lawsuit would have been had Canal received timely notice of the suit. Because there is nothing in the record that would permit a factfinder to calculate the damages resulting from Canal's late notice of the Jordan lawsuit, Canal and Kwik Kargo cannot show damages resulting from the late

14

notice. *Cf. id.* at 928-29 (affirming summary judgment when nothing in the record permitted a jury to calculate damages). The Court grants summary judgment on Kwik Kargo's claims for breach of contract, breach of fiduciary duty, and negligence and on Canal's claims against the Wolff Defendants to the extent they are based on Canal's late notice of the Jordan lawsuit.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.   Canal's Motion for Partial Summary Judgment [Docket No. 53] is GRANTED IN PART and DENIED IN PART.

2.   Kwik Kargo is liable to Canal under the MCS-90 for all reasonable amounts paid by Canal in settling the Jordan lawsuit, all reasonable costs and attorney fees incurred by Canal in settling the Jordan lawsuit, and all reasonable costs and attorney fees incurred by Canal in pursuing reimbursement from Kwik Kargo during this lawsuit.

3.   Canal is ORDERED TO SHOW CAUSE why summary judgment should not be granted with respect to Clear Lake's non-liability on or before May 22, 2009. If Canal makes no argument or is unable to show cause, the Court will dismiss Canal's claims against Clear Lake.

4.   The Wolff Defendants' Motion for Summary Judgment [Docket No. 58] is GRANTED.

5.   Canal's Amended Complaint [Docket No. 33] is DISMISSED WITH PREJUDICE insofar as it asserts claims against the Wolff Defendants.

6.   Kwik Kargo's Third-Party Complaint [Docket No. 12] and Kwik Kargo and Clear Lake's Cross-Claim [Docket No. 37] against the Wolff Defendants are DISMISSED WITH PREJUDICE.

Dated:  April 21, 2009

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge